IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:25-cv-00132-KDB-WCM

| | | |
|---|---|---|
| AUTUMN WHITENER, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND RECOMMENDATION |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I. Procedural Background

On August 19, 2022, Plaintiff filed an application for disability insurance benefits alleging disability beginning on October 1, 2017. Transcript of Administrative Record ("AR") p. 196. Following the denial of Plaintiff's claim on initial review and reconsideration, a hearing was held on November 5, 2024, where Plaintiff appeared and testified. AR pp. 37-77.

On December 3, 2024, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 14-36. The Appeals Council denied Plaintiff's request for review of that decision and on August 25, 2025 Plaintiff filed the instant action. AR pp. 1-6; Doc. 1. Accordingly, the ALJ's decision is the

Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

**II. The ALJ's Decision**

The ALJ determined that Plaintiff had the severe impairments of "systemic lupus erythematosus, Hashimoto's disease, rheumatoid arthritis, irritable bowel syndrome, gout, and depression." AR p. 20. The ALJ further found that Plaintiff had the RFC to perform

> light work…with exceptions. The claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The claimant should have never climbed ladders, ropes or scaffolds. She should have avoided concentrated exposure to heat and cold. She could understand, remember and carry out simple tasks and instructions in a routine work environment. She could have occasionally interacted with the public and co-workers and frequently interacted with supervisors. Changes to the worksite and procedures should have been no more than occasional. She could have frequently reached, handled, and fingered.
>
> AR p. 22.

Applying this RFC, the ALJ found that Plaintiff was not disabled. AR pp. 30-31.

**III. Plaintiff's Allegation of Error**

Plaintiff contends that the ALJ failed to account for her irritable bowel syndrome ("IBS") symptoms or her subjective complaints of pain and fatigue when formulating the RFC.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505(a); 416.905(a). The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).[1] SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. "Evaluating an RFC requires an ALJ to consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his or her] ability to work." Dowling v. Commissioner of Social Security Administration, 986 F.3d 377, 387 (4th Cir. 2021) (quoting 20 C.F.R. § 416.945(a)(1)) (quoting Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) (quoting Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016)) (modification added).

In formulating an RFC, an ALJ is not required to discuss every piece of

[1] 20 C.F.R. § 404.1545 sets out the process for evaluating a claimant's physical abilities relative to claims for disability insurance benefits, while 20 C.F.R. § 416.945 sets out an identical process relative to claims for supplemental security income.

evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is required, however, to build "an accurate and logical bridge from the evidence to his conclusion" that the plaintiff's RFC sufficiently accounts for his limitations. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence."); Darby v. Berryhill, No. 1:16cv366-RJC, 2018 WL 310136, at * (W.D.N.C. Jan. 5, 2018) ("if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion.").

At the same time, it is the claimant's burden to establish that he or she suffers from an impairment which limits his or her functional capacity. 20 C.F.R. 404.1505; 416.905; see Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

**A. Symptoms of IBS**

During her hearing, Plaintiff testified that due to her IBS, she goes to the bathroom "a lot" and spends about five minutes in the restroom per trip. AR p. 70. Plaintiff argues that the ALJ failed to account for her frequent restroom breaks – such as by including a limitation related to the amount of time Plaintiff would be off task – when developing the RFC. See Doc. 7 at 8-9.

The ALJ noted that Plaintiff "presented to gastroenterology in June 2022

with complaints of cramping abdominal pain and frequent diarrhea," was "diagnosed with abdominal pain and diarrhea secondary to irritable bowel syndrome," and "was prescribed Dicyclomine and IBgard" in addition to receiving a recommendation to modify her diet. AR 25 (citing AR 450-451 (June 24, 2022 treatment note reflecting that Plaintiff complained of dull aching and abdominal pain almost every day, with frequent diarrhea but that Plaintiff was no longer modifying her diet and was not taking a probiotic or dicyclomine as needed)). The ALJ further noted that in May of 2023, Plaintiff "continued to eat foods that caused symptoms" of IBS and that although Plaintiff took her prescribed medications, she was not taking "IBgard or a probiotic as recommended." Id. (citing AR 1199 (May 1, 2023 treatment note reflecting Plaintiff's continued complaints of urgency and abdominal bloating and cramping but that Plaintiff continued to eat food she knew would cause symptoms and was not taking IBgard or a probiotic)).

The ALJ concluded that Plaintiff received conservative treatment and was not compliant with treatment for IBS "such as eating inappropriate food and not taking prescribed medications." AR 27.

Plaintiff appears to contend that other treatment notes, which were not discussed by the ALJ, are contrary to the ALJ's conclusion. See Doc. 7 at 7-8. Those treatment notes, though, indicate that Plaintiff did well when she complied with treatment recommendations. See AR 453 (August 14, 2019

treatment note indicating Plaintiff had changed her diet, was taking a daily probiotic and dicyclomine as needed, had "no GI symptoms of nausea, vomiting, abdominal pain, diarrhea or constipation," and that she reported that "changing her diet… made a huge difference" and she was "doing well"); AR 1195 (April 26, 2024 treatment note indicating that Plaintiff was "doing diet modifications and…was doing fairly well" and that although she presented to the emergency room for diverticulitis, she was treated with antibiotics and her symptoms resolved, and Plaintiff denied any current GI symptoms other than "some bloating and belching if she [ate] certain foods").

While the ALJ's explanation regarding Plaintiff's IBS could have been more robust, it appears that the ALJ characterized Plaintiff's treatment with respect to IBS fairly and found that Plaintiff's symptoms were controlled when she was compliant with treatment recommendations. See Granados-Zetina v. Saul, 3:18-CV-537-KDB, 2019 WL 7041288, at *3 (W.D.N.C. Dec. 19, 2019) (finding no error where an ALJ explicitly acknowledged that "the pain associated with irritable bowel syndrome is a contributing factor to the residual functional capacity findings" but that "Bentyl controlled the irritable bowel symptoms"); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); cf., McKinney v. Kijakazi, No. 3:20-CV-278-KDB-DCK, 2022 WL 3656405, at *5 (W.D.N.C. Aug. 8, 2022), report and recommendation adopted

sub nom., 2022 WL 3652958 (W.D.N.C. Aug. 24, 2022).

**B. Plaintiff's Subjective Complaints**

Additionally, Plaintiff argues that the ALJ failed to account for her subjective complaints of pain and fatigue.

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. The Fourth Circuit has consistently recognized that "[a]t this step, objective evidence is not required to find the claimant disabled." Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 95 (4th Cir. 2020). "That is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.

1996).

In that regard, "[t]he type of treatment a claimant receives (including the medication prescribed and taken by a claimant) as well as a claimant's daily activities are appropriately considered by an ALJ when considering a claimant's subjective complaints of pain and the extent to which a claimant's alleged pain impairs her ability to work." Smiley v. Saul, No. 1:19-CV-163-MOC-WCM, 2020 WL 3261010, at *5 (W.D.N.C. May 15, 2020), report and recommendation adopted, 2020 WL 3259541 (W.D.N.C. June 16, 2020) (citing Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); Dunn v. Colvin, 607 Fed. Appx. 264, 274-275 (4th Cir. 2015) (unpubl.) ("if all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is"); Brownlee v. Saul, 1:18cv642, 2019 WL 3858652, at * 9 (M.D.N.C. Aug. 16, 2019) (plaintiff's subjective complaints were not entirely credible based on medical records reflecting full range of motion and full strength, claimant's testimony that he only took over-the-counter medication for his pain, conservative prescribed treatment, and claimant's activities of daily living); Gaston v. Berryhill, 1:17-cv-182-RJC, 2018 WL 3873593, at *6 (W.D.N.C. Aug. 15 2018) (rejecting argument that ALJ improperly relied on the absence of medical records when evaluating claimant's functional limitations)); see also Dowell v. Bisignano, No. 1:24-CV-00123-KDB-DCK, 2025 WL 2083197, at *5 (W.D.N.C. July 24,

2025) (ALJs may not require "claimants to provide medical evidence that would be impossible to produce given their specific medical conditions," but may consider "other evidence contrary to a finding of disability") (citations omitted).

During her November 5, 2024 hearing, Plaintiff testified that she experiences "really bad fatigue" and pain in her ankle, knee, hip, shoulder joints, back, and feet. AR 55, 63. She asserted that pain limited her ability to walk more than about five minutes and limited her ability to sit in one spot for more than thirty minutes. AR 64. She also testified that pain in her hands limited her ability to lift a gallon of milk or hold a pen and that on some days, made it difficult for her to move her hands at all. AR 66-67. Additionally, she testified that she spent roughly ten to fifteen days a month in bed. AR 68.

When developing Plaintiff's RFC, the ALJ acknowledged Plaintiff's testimony regarding her pain and fatigue. AR 23.[2]

The ALJ additionally noted medical records reflecting Plaintiff's complaints of pain in her hands and other joints. See AR 24 (citing AR 494 (November 2021 record indicating normal range of motion in all joints except

---

[2] Plaintiff asserts that, in addition to her hearing testimony, other medical records support her assertion of extreme fatigue. Doc. 7 at 15. For example, Plaintiff cites an October 7, 2024 communication with her medical provider in which she reported being in bed for three days and sleeping for "2 whole days." AR 1366. In that record, though, Plaintiff prefaced her report of exhaustion with "I think I'm getting strep throat again…." Id.

one finger joint), AR 402 (indicating a history of pain in finger of right hand), AR 1039 (March 31, 2023 progress note indicating "uncontrolled" joint pain "affecting all peripheral joints, severe, aching, associated with AM stiffness and joint swelling…."), AR 1027 (May 18, 2023 treatment note indicating the same)).

The ALJ also discussed medical records reflecting Plaintiff's full motor strength, normal hand examinations, and self-reports that she had stable energy and less pain. See AR 23 (citing AR 372 (June 3, 2019 treatment note indicating that Plaintiff presented with complaints of right hand and wrist pain, but exhibited full strength with no evidence of muscle atrophy)); AR 24 (citing AR 938 (December 21, 2020 treatment note in which Plaintiff reported she was doing well with prednisone and that her energy level was stable), AR 492 (November 2021 record indicating that Plaintiff sometimes forgot to take her nighttime dose of Plaquenil but "she can tell she hurts much less…."), AR 1137 (August 2, 2024 treatment note indicating that Plaintiff moved all extremities equally and exhibited a normal gait)); AR 24 (citing AR 1167 (June 22, 2024 treatment record reflecting nonantalgic gait, "full right shoulder range of motion, elbow range of motion wrist thumb and finger composite range of motion," 5/5 grip strength, and full cervical range of motion)); AR 25 (citing AR 1277 (October 21, 2024 treatment record reflecting Plaintiff's report that she continued to struggle with pain in her hands, knees, and ankle, had muscle

aches, weakness, cramps, and fatigue, experienced joint, neck, and back pain, and had difficulty walking, but exhibited normal motor strength)).

Additionally, the ALJ considered Plaintiff's reports of traveling to Alaska, going on a cruise, and visiting the beach, AR 24, as well as Plaintiff's ability to attend church and take her daughter to school. AR 26.

With respect to Plaintiff's alleged symptoms (including Plaintiff's symptoms of IBS, discussed above), the ALJ concluded that:

> The objective medical evidence and examinations findings are not consistent with the degree of symptoms and limitations alleged. The claimant has some synovitis and tenderness on exam, but has 5/5 strength and no atrophy. She had normal range of motion in the shoulder and cervical spine and positive Phalen's test on the right and negative on the left. Imaging of the right shoulder did not show an acute fracture or osseous destructive lesion.
>
> The claimant has received conservative treatment for her condition. At times, she has forgone certain treatment such as when trying to get pregnant and at one time, she was lost to treatment for a year. She has also been non-compliant with treatment for IBS such as eating inappropriate food and not taking prescribed medications.
>
> AR 27. Citations omitted.

Under these circumstances, the undersigned is persuaded that the ALJ explained his reasoning adequately and considered the intensity and persistence of Plaintiff's alleged symptoms appropriately when developing the

RFC.[3]

### VI. Recommendation

Considering the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Signed: August 25, 2026

W. Carleton Metcalf
United States Magistrate Judge

---

[3] The ALJ also considered the opinions of the state agency physicians and concluded that their shared opinion that Plaintiff could perform medium work was partially persuasive in light of medical records reflecting "some tenderness and synovitis, but…5/5 strength and no atrophy….normal range of motion in the shoulder and cervical spine and positive Phalen's test on the right and negative on the left." AR 28. In light of these additional medical indications, the ALJ limited Plaintiff to light rather than medium work "with occasionally postural activities and frequent use of the hands." AR 28.

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).